

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00082-CR

_____


MILES PATRICK CLAYTON, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2007-1502


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Miles Patrick Clayton, after having been convicted by a jury for assault, submitted the issue of punishment to the trial court. Having been sentenced to 365 days in jail and a $4,000.00 fine, Clayton was placed on community supervision for a period of twenty-four months upon the payment of $400.00 and court costs.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The person whom Clayton was charged with assaulting[1] was his wife, Megan Morrow, the assault occurring on July 12, 2007. Although Clayton and Morrow were separated, they were then together in Clayton's truck while traveling on Highway 80 in Harrison County and attempting to resolve their differences. The reconciliation attempt was apparently aborted when the two began to argue, giving rise to Clayton striking Morrow as they proceeded in the truck. They drove to the home of Jesse Clayton, Clayton's father, all the while continuing their argument. After exiting the truck, Clayton pinned Morrow against the vehicle and struck her again. When Morrow tried to leave, Clayton pulled her hair; Morrow fell to the ground, and Clayton struck her once more.

Morrow extricated herself from Clayton's grasp and the physical contact was terminated. Morrow was driven by Maybelle Sloan (the live-in girlfriend of Jesse Clayton, who was present at the time) to a convenience store so that Morrow could call her father to come pick her up.

---

[1]Section 22.01(a)(1) of the Texas Penal Code provides that an offense is committed if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2008).

The day following these occurrences, Morrow contacted the Harrison County Sheriff's Office and was interviewed by Darrell Pruitt, an investigator, to whom she gave a statement concerning the incident. Morrow's statement was transcribed by Pruitt and printed; after reviewing the printed statement, Morrow signed it and requested that a criminal complaint be filed against Clayton. She also completed a family violence form. The family violence form and Morrow's signed statement were both admitted at trial without objection.

During his interview, Pruitt also photographed Morrow and included the photographs as a part of his report. The photographs Pruitt took, admitted without objection, depict Morrow to have bruises on her arms and a split lip. During the interview, Morrow told Pruitt that the bruising on her arms was caused by Clayton. On the family violence form, Morrow checked "yes" to the question inquiring if she had been injured.

At trial, Morrow proved herself to be a reluctant witness. Although she readily testified that she and Clayton had engaged in a heated argument on July 12, she claimed that she did not remember if Clayton had struck her. Morrow said that she went to work at the Waffle House after the altercation and that after she left work, she went to the hospital emergency room because she was experiencing a bad headache, which she believed to be a migraine such as she had experienced in the past.

Sloan and Jesse both testified that Clayton did not hit Morrow. Despite this testimony, the jury returned a verdict finding Clayton guilty, after which Clayton waived sentencing by the jury.

He emphasized that he wanted the trial court to issue the sentence so that bond could be posted and an appeal filed. No testimony or evidence was offered during the punishment phase. The court did not order a presentence investigation (PSI) and assessed the maximum sentence for the offense,[2] but granted community supervision as stated above.

On appeal, Clayton claims that the evidence was legally and factually insufficient, that the information was so vague as to be constitutionally infirm, and that the trial court committed reversible error in rendering punishment in the absence of a PSI.

## II. ANALYSIS OF POINTS OF ERROR

### A. Legal and Factual Sufficiency of the Evidence

Since Clayton has challenged both the legal and factual sufficiency of the evidence, in order to avoid redundancy, we examine them together.

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Cardenas v. State*, 30 S.W.3d 384 (Tex. Crim. App. 2000). In conducting this review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure

---

[2]Section 12.21 of the Texas Penal Code provides that a person adjudged guilty of a class A misdemeanor shall be punished by "a fine not to exceed $4,000; . . . confinement in jail for a term not to exceed one year; or . . . both such fine and confinement." TEX. PENAL CODE ANN. § 12.21 (Vernon 2003).

that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

A factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We view all evidence in a neutral light when conducting a factual sufficiency review. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S.Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We must determine if the evidence in support of the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15; *Drichas v. State*, 219 S.W.3d 471, 473 (Tex. App.—Texarkana 2007, pet. ref'd).

We are mindful of the fact that a jury has already heard the evidence and convicted based on that evidence. While a factual sufficiency review allows a very limited degree of "second-guessing" the jury, the review should be deferential, with a high level of skepticism about the jury's verdict before a reversal can occur. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson*, 204 S.W.3d at 417.

The primary difference between legal and factual sufficiency standards is that "the former requires the reviewing court to defer to the jury's credibility and weight determinations while the

latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'" *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

In addition, we are instructed to employ a hypothetically-correct jury charge analysis to evaluate both the legal and factual sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Under the hypothetically-correct jury charge analysis, it was the responsibility of the State to prove that (1) Clayton (2) intentionally, knowingly, or recklessly (3) caused (4) bodily injury (5) to another.[3]

Reiterating the pertinent testimony bearing on this, the testimony given by Pruitt provided evidence that on July 13, 2007, Morrow reported assaults on her by Clayton the previous day. This information was typed and put in a statement format, which Morrow signed. Pruitt testified that he saw bruising on Morrow's arms and a split lip which happened in the confrontation with Clayton.

---

[3]TEX. PENAL CODE ANN. § 22.01(a)(1).

The altercation between Morrow and Clayton resulted in Clayton hitting and grabbing Morrow. Morrow told Pruitt then that her injuries had been caused by Clayton.[4]

The evidence at trial also included seven photographs depicting Morrow's bruising, a scratch mark, and a split lip. Pruitt testified that these marks and split lip were caused by Clayton hitting Morrow.

The Texas Penal Code defines bodily injury as physical pain, illness, or any impairment of physical condition.[5] No witness testified directly that Morrow suffered pain as a result of being struck by Clayton. However, the jury is permitted to draw reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of her injuries. *See Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd). The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish "bodily injury" within the meaning of the statute. *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (citing *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of cut on arm sufficient to show bodily injury)).

---

[4]We acknowledge that much of Pruitt's testimony was hearsay, and note that no objection was made to the majority of this testimony. Such hearsay might be excluded upon the request of a party to the lawsuit. Once admitted without objection, however, such evidence enjoys a status equal to that of all other admissible evidence. In particular, it has probative value and will support a judgment in favor of the party offering it. *Poindexter v. State*, 153 S.W.3d 402, 409 (Tex. Crim. App. 2005); *Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex. Crim. App. 1986).

[5]TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon 2005).

7

Although Morrow testified to an apparent lapse of memory which caused her to forget the physical assault on her (acknowledging that she was testifying only because she was subpoenaed to do so), Morrow identified her signature on the statement prepared by Pruitt, as well as the photographs depicting the bruises on her arms. She likewise testified that she remembered neither the bruises nor the cause for the bruises to be on her arm. Morrow explained that she had been involved in a serious automobile accident the April preceding the July incident, and she was still healing from the accident in July.

Morrow testified that she and Clayton went to the home of Clayton's father, where she got a ride to the convenience store from Sloan. Morrow's father picked her up from the store, and Morrow went to work at the Waffle House later that afternoon. Morrow testified that she and Clayton were arguing at the home of Jesse, but she was unable to remember the cause of the argument.

Both Sloan and Jesse denied that any physical altercation took place between Morrow and Clayton while they were at Jesse's home. Although Sloan indicated that she heard Morrow and Clayton bickering, she paid little attention to it. She then agreed to give Morrow a ride to a convenience store on Sloan's way to work. Sloan did not notice that any harm had come to Morrow and saw no bruises on her. She indicated that Morrow made no complaint to her about being hurt.

Jesse testified that he recalled Clayton and Morrow coming to his house on the day of the incident and they were arguing. He neither witnessed any physical violence being inflicted nor heard

anyone complain that physical violence had taken place. According to Jesse, Morrow did not have a split lip or any bruising.

When the entirety of this testimony and evidence (including Morrow's witness statement and the photographs taken by Pruitt) is viewed in a light favorable to the verdict, a rational jury could find the essential elements of the offense of assault beyond a reasonable doubt.

In our factual sufficiency review, we must take into account Morrow's testimony that she does not recall Clayton striking her. We take into account as well the testimony of Sloan and Jesse that they did not witness any physical violence; Morrow did not complain that she was in pain and no injuries to Morrow were observed by Jesse or Sloan after the assault. The photographs taken the next day clearly indicated bruising to Morrow's arms. The split lip was not readily visible unless Morrow lifted her upper lip so that the cut could be seen. Pruitt testified that, indeed, the bruising and split lip resulted from Clayton striking Morrow.

It was the jury's task to weigh this evidence and draw all reasonable inferences from it. *Arzaga*, 86 S.W.3d at 779. The trier of fact is free to believe or disbelieve part or all of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). The evidence in support of the verdict is neither so weak that the verdict is clearly wrong and manifestly unjust, nor is the jury's finding against the great weight and preponderance of the conflicting evidence. The evidence is both legally sufficient and factually sufficient to support the conviction.

9

**B.    Validity of the Information**

The question of whether the information charges the criminal offense of assault as defined by the Texas Penal Code is an issue of law.  Because this issue is based on undisputed facts, we will review de novo this issue of law.  *See generally Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Brossette v. State*, 99 S.W.3d 277, 280 (Tex. App.—Texarkana 2003, pet. dism'd, untimely filed).

Clayton did not object to the information prior to trial.  Here, Clayton claims that the information was fundamentally defective in that it is not an "information" under Article V, Section 12 of the Texas Constitution and therefore fails to vest the trial court with jurisdiction.  Clayton contends that this issue can be raised for the first time on appeal.  *See Teal v. State*, 230 S.W.3d 172, 179 (Tex. Crim. App. 2007).  Clayton is correct in this assertion.  However, Clayton's conclusion that the information was fundamentally flawed is incorrect.

From an historical standpoint, defects of substance in an information or indictment were "fundamental" errors and could be challenged at any point in the proceedings.  *See, e.g.*, *Morris v. State*, 13 Tex. Ct. App. 65, 71 (1882); *see also Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995).  Article V, Section 12 of the Texas Constitution was amended in 1985 to provide that the presentation of an indictment or information vests the trial court with jurisdiction over the case.  *See* TEX. CONST. art. V, § 12; *see also Studer v. State*, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990).

10

A defendant waives any defect of form or substance in an information if no objection is made before the date trial commences. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005).

However, an instrument which is not an indictment or information under Article V, Section 12 of the Texas Constitution fails to vest the trial court with jurisdiction and the issue can be raised for the first time on appeal. *See Duron v. State*, 956 S.W.2d 547, 555 (Tex. Crim. App. 1997); *Mantooth v. State*, 269 S.W.3d 68, 72 (Tex. App.—Texarkana 2008, no pet.). "[T]o comprise an [information] within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense." *Cook*, 902 S.W.2d at 477. Further, an instrument is an information under the Constitution if "it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Duron*, 956 S.W.2d at 550–51.

A charging instrument does vest jurisdiction in the trial court, and thus must be objected to prior to trial, when the instrument is clear enough in its language that the defendant can identify what Texas Penal Code provision he is accused of violating. *Teal*, 230 S.W.3d at 180.

According to Clayton, the information fails because it makes reference to "victim" without reference to Morrow, and the term "victim" is neither defined in the Texas Penal Code nor is it identified in the jury charge.

11

The complained-of information in this case states:

MILES PATRICK CLAYTON, on or about the 12TH DAY OF JULY, A.D., 2007, in the County of Harrison and State of Texas and before making and filing of this information, did then and there in said County and State,

intentionally, knowingly and recklessly cause bodily injury to MEGAN MORROW, by STRIKING VICTIM ABOUT THE FACE AND BODY WITH HIS HAND AND BY GRABBING VICTIM'S ARM AND BY PULLING VICTIM'S HAIR, and MEGAN MORROW was then a member of defendant's family and/or household

against the peace and dignity of the State.

The information, though perhaps not artfully drawn, clearly gave Clayton notice of the allegations he was called upon to defend. The information satisfies constitutional muster in that it (1) charges a person, namely "Miles Patrick Clayton" (2) with the commission of an offense. The information accuses Clayton of a crime with enough clarity and specificity to identify the penal statute under which the State intended to prosecute. Because the information is plainly an "information" under Article V, Section 12 of the Texas Constitution, Clayton was required to voice any objections to it prior to commencement of trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b). Because this was not done, Clayton waived any objections to the information.

### C.    Absence of PSI Report

Clayton claims the trial court committed reversible error in assessing the maximum permissible punishment without having first obtained a PSI. As we held in *Smith v. State*, 91 S.W.3d 407, 409 (Tex. App.—Texarkana 2002, no pet.), the general rule is the trial court must order a PSI

12

report unless the Texas Code of Criminal Procedure provides an exception.[6] No statutory exception applies in this case. However, when a defendant fails to object to the lack of a PSI or call the lack of a PSI to the attention of the trial court, he waives the requirement and error on this issue is not preserved for appellate review. *Id.*

Counsel for Clayton mentioned a PSI, but did not specifically request one and, instead, indicated a desire for immediate sentencing. The sole mention of the PSI was prefatory to a request that sentencing proceed promptly so that an appeal might be taken. The exchange between the trial court and Clayton's counsel's mention of a PSI follows:

> THE COURT: Gentlemen, are we ready to proceed with sentencing?
>
> [Counsel for State]: Yes, sir.
>
> [Counsel for Clayton]: We're going to the judge for sentencing, Judge, because we are going to appeal. I don't know how you want to do it. Do you want to do a PSI? Do you want to do the sentencing now and the bond and all that?
>
> THE COURT: Well, you've got an election. Mr. Clayton wants to withdraw his --

---

[6]Article 42.12, Section 9(b) of the Texas Code of Criminal Procedure provides:

The judge is not required to direct a supervision officer to prepare a report in a misdemeanor case if:
   (1) the defendant requests that a report not be made and the judge agrees to the request; or
   (2) the judge finds that there is sufficient information in the record to permit the meaningful exercise of sentencing discretion and the judge explains this finding on the record.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(b) (Vernon Supp. 2008).

13

[Counsel for Clayton]: Yes.

THE COURT: And does the State object to that?

[Counsel for State]: No, Your Honor.

THE COURT: All right. Any evidence or witnesses?

[Counsel for Clayton]: No. None. We just want the sentencing done so we can make appeal and go on.

The issue raised by this exchange is whether a PSI was called to the trial court's attention sufficiently or in such a way as to require the trial court to order the study. While counsel for Clayton did mention the PSI, he attached no importance to it and he also repeatedly stated that he desired the sentencing to go forward; the focus was not on the PSI, but on getting the process completed so that an appeal could be filed. Clayton failed to object or to call the trial court's attention to the PSI in a meaningful way. The PSI was mentioned as a peripheral issue. We find that Clayton waived his right to a PSI report.

Even had there been no waiver of the PSI, Clayton was not harmed by the failure to conduct a PSI. When a trial court is required to order a PSI, but fails to do so, the court of appeals must conduct a harm analysis. *Whitelaw v. State*, 29 S.W.3d 129, 132 (Tex. Crim. App. 2000) (superseded by statute on other grounds); *Buchanan v. State*, 68 S.W.3d 136, 140 (Tex. App.—Texarkana 2001, no pet.) (applying harm analysis). Nonconstitutional error is harmless if it did not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is

14

affected when the error had a substantial and injurious effect or influence on the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The defendant does not have the burden of showing harm, but harm must appear from the record. *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) ("[N]o burden to show harm should be placed on the defendant who appeals.").

A PSI report provides information regarding the circumstances of the offense, the amount of restitution necessary, the criminal and social history of the defendant, and any other information relating to the defendant or the offense that is requested by the trial court. The PSI report is also to set forth a proposed client supervision plan which describes programs and sanctions that the community supervision and corrections department would provide in the circumstance the court suspends the imposition of the sentence or grants deferred adjudication. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (Vernon Supp. 2008).

Here, the record shows that Clayton and Morrow testified at the hearing. The same judge who presided at Clayton's trial and heard the evidence also adjudicated him guilty. The trial court was familiar with Clayton and the circumstances of the underlying offense. The attorney for the State made the trial court aware of the fact that Clayton's sole prior criminal history was more than ten years old. In addition, the court tempered the blow of the sentence by granting community supervision. Under these circumstances, any error in failing to order the preparation of a PSI report had no injurious effect on the punishment assessed and any such error is harmless.

## III.  CONCLUSION

Because we find the evidence legally and factually sufficient to sustain the conviction, because any defect in the information was waived, and because the failure to order a PSI was likewise waived, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     October 1, 2009
Date Decided:       October 2, 2009

Do Not Publish

16